IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| JAMES W. IRWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:22-cv-00751-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| DONNA B. LUBY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant Donna B. Luby's ("Luby") motion to dismiss or, in the alternative, to transfer venue, ECF No. 4. For the reasons set forth below, the court transfers this case to the Northern District of Ohio.

### I.  BACKGROUND

This case concerns the distribution of proceeds from the sale of a jointly-owned property. In 2004, Luby and plaintiff James W. Irwin ("Irwin") agreed to purchase a vacation home located at 37 Wexford on the Green in Hilton Head Island, South Carolina (the "Property"). According to Irwin, Luby initially could not qualify for the mortgage, so Irwin purchased the Property under his name only. ECF No. 14-1, Irwin Decl. ¶¶ 13–15. After Luby sold her condominium unit known as the "Evian," which was also located on Hilton Head Island, Irwin conveyed one-half undivided interest in the Property to Luby, and the parties executed an Agreement Between Tenants in Common (the "Agreement"). Id. ¶ 26; ECF No. 1-1 at 16. Thereafter, Luby and Irwin each owned one half of the property until it was sold in September 2020. The proceeds from the sale are currently being held in the trust account of a South Carolina attorney at the Wiseman Law Firm in Hilton Head, South Carolina, and the parties cannot agree on the proper

division of the sale proceeds. In the complaint, Irwin seeks the equitable division of sale proceeds based on the relative contribution of expenses paid by each party.

On January 26, 2022, Luby filed her complaint against Irwin in the Northern District of Ohio, seeking relief for breach of contract (the "Ohio Action"). Luby v. Irwin, No. 1:22-cv-00139-CAB (N.D. Ohio Jan. 26, 2022) (ECF No. 1) (hereinafter, "Ohio Dkt." et seq.). According to Irwin, he was not served with the summons and complaint for the Ohio action until February 18, 2022.

On February 10, 2022, Irwin filed his complaint against Luby in the Beaufort County Court of Common Pleas, alleging breach of contract, quantum meruit or unjust enrichment, and seeking a declaratory judgment declaring that that the net proceeds be distributed as set out in the Agreement.[1] ECF No. 1-1, Compl. On March 8, 2022, Luby removed the action to this court. ECF No. 1.

On March 15, 2022, Luby filed her motion to dismiss or, in the alternative, to transfer venue. ECF No. 4. Irwin responded in opposition on March 28, 2022, ECF No. 14, and Luby replied on April 4, 2022, ECF No. 17. The court held a hearing on the motion on April 13, 2022. ECF No. 20. As such, the motion has been fully briefed and is now ripe for review.

## II.  DISCUSSION

Luby moves to dismiss Irwin's complaint on two grounds: (1) the court lacks personal jurisdiction over Luby under Federal Rule of Civil Procedure 12(b)(2), and (2)

---

[1] According to Irwin, Luby was served the summons and complaint for the instant action on February 17, 2022. Luby, however, claims she could not have been served that day because she was leaving her home in Ohio to fly out that early morning. Since the court does not reach the motion to dismiss for improper service, the court need not resolve this dispute.

there was insufficient service of process under Rule 12(b)(5).  In the alternative, Luby moves the court for a transfer of venue to the District of Northern Ohio pursuant to the first-filed rule and 28 U.S.C. § 1404(a).  Since the court finds that this case may be resolved under the first-filed rule, the court does not address the motion to dismiss and instead transfers the case to the Northern District of Ohio.

Luby commenced the Ohio Action on January 26, 2022, and the case remains pending in the Northern District of Ohio.[2]  Irwin filed the complaint in the instant action on February 10, 2022.  Compl.

The Fourth Circuit adheres to the "first filed" rule.  MVP Grp. Int'l, Inc. v. Smith Mountain Indus., Inc., 2012 WL 425010, at *1 (D.S.C. Feb. 9, 2012) (citations omitted).  The rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed."  Victaulic Co. v. E. Indus. Supplies, Inc., 2013 WL 6388761, at *2 (D.S.C. Dec. 6, 2013) (quoting Allied–Gen. Nuclear Servs. v. Commonwealth Edison Co., 675 F.2d 610, 611 n.1 (4th Cir. 1982)).  "A district court may dismiss, stay, or transfer a later-filed lawsuit in deference to the first filed action."  St. Paul Fire & Marine Ins. Co. v. Renne Acquisitions Corp., 2010 WL 2465543, at *2 (W.D.N.C. June 14, 2010).  However, "[a]pplication of the rule is discretionary, not mandatory," and the Fourth Circuit "has no unyielding 'first-to-file' rule."  Victaulic, 2013 WL 6388761, at *2.

---

[2] On November 1, 2022, the Northern District of Ohio denied Irwin's motion to dismiss or, in the alternative, to transfer venue to the District of South Carolina.  Ohio Dkt. 11.

"Procedurally, the court first considers whether the two competing actions are substantially the same or sufficiently similar to come within the ambit of the first-to-file rule." Id. (quoting Harris v. McDonnell, 2013 WL 5720355, at *3 (W.D. Va. Oct. 18, 2013)). "[D]uplicative actions a[re] those where 'the parties, issues, and available relief do not significantly differ between the two cases.'" MVP Grp., 2012 WL 425010, at *1 (citing Cottle v. Bell, 2000 WL 1144623, at *1 (4th Cir. 2000) (unpublished table opinion)); see also Nexsen Pruet, LLC v. Westport Ins. Corp., 2010 WL 3169378, at *2 (D.S.C. Aug. 5, 2010) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums."). Here, the two competing actions are substantially similar as they involve the same two parties, and each action is premised on the other party's alleged breach of contract. Irwin argues that he did not learn of the Ohio Action until after he had filed and served the complaint in the instant action, but he cannot dispute that the Ohio Action was the first filed. In determining the priority between concurrently pending cases in different federal courts, "'[f]irst filed' means first filed and not first served." McJunkin Corp. v. Cardinal Sys., Inc., 190 F. Supp. 2d 874, (S.D. W. Va. 2002) (citing UTI Corp. v. Plating Res., Inc., 1999 WL 286441 at *7 (E.D.Pa.1999)). As such, the first-filed rule governs the duplicative actions before this court and the Northern District of Ohio.

As this court recently explained, courts in this district may exercise discretion in applying the first-filed rule by applying the convenience factors used to decide whether to transfer a case under 28 U.S.C. § 1404(a). See Leagans v. LeMaitre Vascular, Inc., 2021 WL 4753269, at *4 (Oct. 12, 2021) (explaining that the majority of courts weigh the balance of convenience factors as part of the analysis under the first-filed rule); see also

CompuZone, Inc. v. Top Tobacco, L.P., 2015 WL 12804523, at *4 (D.S.C. May 5, 2015) (citation omitted) ("This 'exception' effectively mirrors the court's authority to transfer an action under 28 U.S.C. 1404(a)."). As such, inquiries into whether to apply the first-filed rule and whether to transfer the case merge under the same analysis, and the court proceeds to determine whether the convenience factors favor transfer. The convenience factors "commonly considered" are:

> (1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

Atkins v. Mortara Instrument, Inc., 2017 WL 10754250, at *2 (D.S.C. Sept. 29, 2017). "Typically, the burden is on the movant to show that transfer to another forum is proper, however, the first[-]filed rule shifts this burden to the party seeking adjudication in the second forum."[3] MVP Grp., 2012 WL 425010, at *2 (citing Rite Way Crack Repair, LLC v. Guardian Crack Repair, LLC, 2009 WL 2923085, at *3–4 (D. Md. Sept. 10, 2009)). The court addresses each factor in turn, ultimately finding that the factors favor transfer to the Northern District of Ohio.

**A. Ease of Access to Sources of Proof**

Irwin argues that the first factor supports litigation in South Carolina because "[a]ll documents of record for the property, expenses, and the actual proceeds from the

---

[3] For this reason, the court gives minimal weight to the "plaintiff's 'choice of venue.'" ECF No. 14 at 13 (quoting Bd. of Trs. v. Sullivant Ave. Props., LLC, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007). This factor is effectively negated by Luby's choice of Ohio as the venue. See Scardino v. Elec. Health Res., LLC, 2016 WL 1321147, at *7 (D.S.C. Apr. 5, 2016) (quoting Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 979 (7th Cir. 2010) ("[W]here . . . related suits are pending in different venues, deference to the plaintiff's choice of forum 'loses its significance entirely: each case has a plaintiff, and one of them will necessarily be disturbed.'").

sale are located in South Carolina." ECF No. 14 at 14. Irwin further contends that the deed of the Property to Irwin, the deed reflecting conveyance to Luby, the Agreement, and the deed to the new owner are all recorded in Beaufort County, South Carolina. Finally, Irwin notes that the property itself and the proceeds from the sale are physically located in South Carolina. Luby responds that the only relevant evidence in this case is extrinsic evidence required to resolve the disputed ambiguous terms in the Agreement, and such "third-party evidence is located exclusively in Ohio." ECF No. 17 at 14.

It is unclear what purpose procurement of the physical Agreement and deeds would serve. To the extent such documents are necessary, the court anticipates that those documents, along with evidence of the expenses and proceeds, will be subject to electronic discovery and accessible in that format. See McNeil v. Sherman, 2009 WL 3255240, at *8 (D.S.C. Oct. 7, 2009) ("[T]he location of documents has become a less significant factor as technological advances make the copying, storage, and transfer of documents easier."); accord Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 501 (D. Mass. 2018) (finding that in the modern age, "digital documents are just a click away [and] [a]ccordingly, this factor does not weigh in favor of either party"). As such, the court finds that this factor is neutral.

### B. Convenience of the Parties

Under the second factor, Irwin acknowledges that the parties will be equally inconvenienced based on whether venue is in South Carolina or Ohio. The court agrees. See JTH Tax, Inc. v. Callahan, 2013 WL 3035279, at *5 (E.D. Va. June 6, 2013) (finding that the party convenience factor did not support transfer when transfer would simply

shift the inconvenience from the defendant to the plaintiff). This factor is therefore neutral.

### C. Convenience and Cost of Obtaining the Attendance of Witnesses

Irwin argues that the convenience of the witnesses dictates litigating in South Carolina because the witnesses who will testify about the records of the expenses are in South Carolina. Luby responds that it is unlikely any South Carolina resident will be a witness because the expenses—i.e., the amount of the mortgage payments—are for a sum certain. At the hearing, Irwin represented that the expenses in dispute are not limited to the mortgage payments and include club fees, taxes paid on vehicles, homeowners' association fees, fees related to the transferal of rentals, and other expenses. Irwin explained that he intends to name property managers as witnesses to testify about those expenses. The court agrees that Irwin has made a preliminary showing that some relevant third-party witnesses are in South Carolina.

On the other hand, Luby argues that there are third-party witnesses who are in Ohio since the Agreement was drafted in Ohio and the "attorneys, their staff, and their files are all located in Ohio." ECF No. 17 at 7. Irwin replies that there is no argument "regarding the validity of the tenants in common contract." ECF No. 14 at 13–14. While the validity of the Agreement may not be in dispute, certain terms of the Agreement appear to be in dispute. On this point, Irwin contends that the parol evidence rule would bar any lawyers from testifying on the meaning of the terms. But like the court found for Irwin, such a determination would be premature at this stage. The court finds it conceivable that witnesses in Ohio may need to be called to testify as to the meaning of

the terms in the Agreement. Therefore, this factor is neutral, as both parties have argued that third-party witnesses may need to travel to another venue to testify.

### D. The Availability of Compulsory Processes and Possibility of a View by the Jury

Neither party addresses these two factors, and the court similarly finds them inapplicable to this matter.

### E. The Interest of Having Local Controversies Decided at Home

The interest of having local controversies decided at home is often informed by which state's law applies to the controversy. See BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F. Supp. 2d 493, 499 (E.D. Va. 2000) (finding that alternative forum had a strong interest in hearing a case decided under that state's law). Neither party references what state's law governs the Agreement. There does not appear to be a choice-of-law provision in the Agreement. See generally ECF No. 1-1 at 16–21. In its absence, the court notes, without deciding,[4] it is likely that Ohio law applies because the Agreement was drafted and negotiated in Ohio. See Lister v. NationsBank of Del., N.A., 494 S.E.2d 449, 455 (S.C. Ct. App. 1997) (quoting Livingston v. Atl. Coast Line R.R., 180 S.E. 343, 345 (S.C. 1935)) (holding that in South Carolina, "contracts are to be governed as to their nature, validity and interpretation by the law of the place where they are made, unless the contracting parties clearly appear to have had some other place in view"). Thus, the court finds that this factor preliminarily weighs in favor of transfer.

---

[4] This determination is ultimately for the Northern District of Ohio to make, but the court notes that in Judge Boyko's order on the motion to transfer, the court found that Irwin's activities in Ohio gave rise to Luby's breach of contract claim. Ohio Dkt. 11 at 8.

### F. The Interests of Justice

Even if the court determined that the factors weigh in Irwin's favor, some courts have determined that in the application of the first-to-file rule, "the interest of justice factor (i.e., promotion of judicial economy, avoidance of inconsistent judgments) 'may be decisive in ruling on a transfer motion, even though the convenience of the parties and witnesses point in a different direction.'" Victaulic, 2013 WL 6388761, at *4 (quoting Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)); but see Scardino, 2016 WL 1321147, at *3 ("[T]hat may not always be true, and courts cannot ignore their obligation to fashion some other equitable solution that, in their reasoned discretion, they believe will better serve litigants, witnesses, and the court system.").

Here, the court finds that even "wholly apart from the first-to-file rule, transfer of the action . . . would 'promote judicial economy and consistency of results.'" Motley Rice, LLC v. Baldwin & Baldwin, LLP, 518 F. Supp. 2d 688, 700 (D.S.C. 2007) (quoting Byerson, 467 F. Supp. 2d at 635). As the court explained earlier, the Northern District of Ohio recently ruled on a motion to dismiss or transfer filed in the Ohio Action. The court retained jurisdiction in that case. As such, allowing this action to proceed would result in duplicative litigation. Proceeding on a parallel track would also create a risk of a future judgment that is inconsistent with another court's ruling. Finally, even apart from the interests-of-justice considerations, the court finds that the convenience factors sufficiently weigh in favor of transfer. As such, the court transfers the case to the Northern District of Ohio, where the court anticipates it will be consolidated with the Ohio Action.

### III. CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to transfer and transfers this case to the Northern District of Ohio.

**AND IT IS SO ORDERED.**

                                          **DAVID C. NORTON**
                                          **UNITED STATES DISTRICT JUDGE**

**November 10, 2022**
**Charleston, South Carolina**